[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10401

_____

ROBERT WAYNE DOTSON,
FRANCINE MARIA DIGIORGIO,
OLENA DOTSON,

                                                    Plaintiffs-Appellants,

*versus*

UNITED STATES OF AMERICA,
U.S. Postal Service,

                                                    Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:19-cv-02179-CEH-JSS

————————————

Before LAGOA, BRASHER, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

Plaintiffs Robert Dotson, Olena Dotson, and Francine Digiorgio appeal the district court's order granting summary judgment for the United States on their negligence claims. Below, the district court determined that, pursuant to 28 U.S.C. § 2401(b), Plaintiffs' action was untimely because more than six months had passed between the United States Postal Service sending a certified letter denying their administrative claims and the filing of their complaint in this case. The district court further found that Plaintiffs had failed to show entitlement to equitable tolling of the limitations period.

This appeal requires us to determine whether the USPS's final denial letter sent to Plaintiffs' counsel of record in the administrative proceeding complied with the plain language of 39 C.F.R. § 912.9(a) after suit had been filed by a different counsel in federal district court. Plaintiffs assert that the regulation instead required the USPS to send the final denial letter to their counsel in this case—even though Plaintiffs had not notified the USPS of any

change in counsel in the administrative proceedings. Plaintiffs also contend that they demonstrated entitlement to equitable tolling. For the reasons discussed below, and with the benefit of oral argument, we hold that the USPS complied with the plain language of § 912.9(a) by sending the denial letter to the legal representative most recently identified to the USPS as representing Plaintiffs for purposes of their administrative claims. We therefore affirm the district court's grant of summary judgment as Plaintiffs' FTCA claims are untimely under § 2401(b) because they were filed more than six months after the mailing of the denial letter.

## I.    RELEVANT BACKGROUND

On April 30, 2016, Plaintiffs were involved in a motor vehicle accident involving a vehicle operated by Sandra Delgado, a USPS employee, in Hillsborough County, Florida. On February 16, 2017, Plaintiffs each submitted a USPS Standard Form 95 "claim for damage, injury, or death" suffered in that accident. On that date, Plaintiffs were represented by the law firm of Rywant, Alvarez, Jones, Russo & Guyton, P.A. (the "Rywant firm"), which submitted the executed claim forms on behalf of Plaintiffs. On March 16, 2018, the USPS received notice from the Pawlowski Mastrilli Law Group (the "Pawlowski firm") indicating that it was now representing Plaintiffs, not the Rywant firm.

On September 27, 2018, Plaintiffs filed a Federal Tort Claims Act action against the government and Delgado in the Middle District of Florida, in case number 8:18-cv-2388-T-23TGW (the "first FTCA action"). On October 16, 2018, a copy of the complaint and

summons in the first FTCA action was delivered to the government at the United States Attorney's Office in Tampa, Florida. T. Patton Youngblood, Jr., and the Youngblood Law Firm (collectively, "Youngblood") filed the first FTCA action complaint on behalf of Plaintiffs, and Youngblood was the only attorney representing Plaintiffs in that action. Youngblood, however, never represented Plaintiffs in relation to the filing of their administrative claims.

On October 22, 2018, the USPS mailed a certified letter denying Plaintiffs' administrative claims to the Pawlowski firm, which received the letter three days later. The denial letter explained that under 28 U.S.C. § 2401(b) and 39 C.F.R. § 912.9(a), "if dissatisfied with [USPS's] final denial of [the] administration claim[s], . . . any suit filed in regards to this denial must be filed no later than six (6) months from the date of the mailing of this letter." Plaintiffs therefore had until April 22, 2019, to file their suit against the government.

At some point before the USPS mailed the denial letter, the Pawlowski firm stopped representing the Plaintiff in the administrative proceedings. Unlike the earlier change in counsel involving the Rywant firm, however, neither the Pawlowski firm nor Youngblood had provided the USPS of notice of any change in representation in relation to Plaintiffs' administrative claims.

On March 14, 2019, the first FTCA action was dismissed without prejudice under a Middle District of Florida local rule because Plaintiffs failed to move for a clerk's default within sixty days

after serving the government and Delgado. This dismissal thus occurred more than a month before the expiration of the six-month limitation period referenced in the denial letter.

The next day, Youngblood spoke with David Sullivan, an Assistant U.S. Attorney who was counsel for the government. According to Youngblood, Sullivan advised him that if he "were to forward reasonable updated demands to him that all three Plaintiffs' claims could possibly be settled." Youngblood proceeded to update all of Plaintiffs' medical records and bills to submit to Sullivan, but he faced delays in obtaining updated records and bills from hospitals. Youngblood finally sent written demand letters with updated records and bills on behalf of Plaintiffs to Sullivan on August 7, 2019. Shortly after, Sullivan advised Youngblood that Plaintiffs needed to file suit before the government could engage in any negotiations on their claims.

On August 30, 2019, Plaintiffs filed their second FTCA complaint, in which each Plaintiff asserted a negligence claim based on Delgado's operation of the vehicle that rear-ended their vehicle. On January 13, 2020, following a meeting between Youngblood and Sullivan to prepare the case management report, Sullivan emailed the denial letter to Youngblood. This was the first time Youngblood ever saw the denial letter.

On March 4, 2020, the government moved for summary judgment, arguing that Plaintiffs' claims were time barred under § 2401(b) because the USPS mailed the denial letter on October 22, 2018, and Plaintiffs did not file their complaint until more than six

months after the mailing of the letter. The government further argued that Plaintiffs' first FTCA action, which was filed within the statute of limitations, did not cure their current complaint's untimeliness, as the first FTC action was dismissed without prejudice.

Plaintiffs opposed the government's summary judgment motion, contending that the USPS violated § 2401(b) and the regulations interpreting that statute by not sending the denial letter to Youngblood. Plaintiffs claimed that the government was on notice that Youngblood was the only attorney representing them at the time of the denial letter because Youngblood was the only attorney of record listed on the first FTCA action. Plaintiffs also argued that, because the denial letter was sent after the first FTCA action was filed, its directive was a "moot issue," and the dismissal of the first FTCA action required the government to send another denial letter to Youngblood.

In support of their opposition to summary judgment, Plaintiffs provided an affidavit from Youngblood. Youngblood attested that there was "no written referral, or other, agreement" between him and the Pawlowski firm by which the Pawlowski firm "would remain on as counsel for Plaintiffs" and that he "assumed complete and sole responsibility for all aspects of representation of the Plaintiffs" beginning in May 2018 after the Pawlowski firm referred the case to him. Youngblood also attested that the Pawlowski firm never brought the existence of the denial letter to his attention and that he was aware of the legal implications of such a letter. But there is no record evidence that Youngblood informed Sullivan

that he had taken over Plaintiffs' representation in the administrative proceedings at any time prior to receiving a copy of the denial letter from Sullivan.

On November 4, 2020, the district court held a hearing on the government's summary judgment motion. During the hearing, Plaintiffs argued that they were entitled to equitable tolling, and the district court ordered supplemental briefing on the matter. On December 18, 2020, the district court granted the government's summary judgment motion, finding that the action was untimely and that Plaintiffs were not entitled to equitable tolling. This appeal ensued.

## II.    STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo, "viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *McCullough v. United States*, 607 F.3d 1355, 1358 (11th Cir. 2010) (quoting *Rine v. Imagitas, Inc.*, 590 F.3d 1215, 1222 (11th Cir. 2009)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Questions of statutory and regulatory interpretation are legal issues we review de novo. *Freixa v. Prestige Cruise Servs., LLC*, 853 F.3d 1344, 1346 (11th Cir. 2017). And the district court's

interpretation and application of the statute of limitations is a legal issue that we review de novo. *McCullough*, 607 F.3d at 1358.

## III.    ANALYSIS

On appeal, Plaintiffs contend that the government failed to comply with the plain language of 39 C.F.R. § 912.9(a) when the USPS sent the denial letter to the Pawlowski firm, their former counsel, instead of Youngblood, their current counsel. They also contend that the district court erred in finding they were not entitled to equitable tolling of § 2401(b)'s six-month limitations period.[1] We address these arguments in turn.

## A. Whether the government's mailing of the denial letter complied with 28 U.S.C. § 2401(b) and 39 C.F.R. § 912.9(a)

"It is well settled that sovereign immunity bars suit against the United States except to the extent that it consents to be sued" and that "statutory waivers of sovereign immunity 'are to be construed strictly in favor of the sovereign.'" *Means v. United States*, 176 F.3d 1376, 1378 (11th Cir. 1999) (quoting *McMahon v. United States*, 342 U.S. 25, 27 (1951)). "'The FTCA is a specific, congressional exception' to the United States' sovereign immunity for tort claims, under which the government may 'be sued by certain parties under certain circumstances for particular tortious acts

---

[1] Plaintiffs do not make the argument they made below that the government was required to mail a new denial letter following the dismissal of their first FTCA action and, as such, have abandoned this argument on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

committed by employees of the government.'" *Turner ex rel. Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008) (quoting *Suarez v. United States*, 22 F.3d 1064, 1065 (11th Cir. 1994)). The FTCA's waiver "must be scrupulously observed, and not expanded, by the courts." *Id.* (quoting *Suarez*, 22 F.3d at 1065); *accord Phillips v. United States*, 260 F.3d 1316, 1318 (11th Cir. 2001) ("[T]he FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed.").

The statutes and regulation at issue here provide in relevant part:

### Disposition by federal agency as prerequisite

(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.

28 U.S.C. § 2675(a).

### Time for commencing action against United States

> (b)  A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless the action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

*Id.* § 2401(b).

### Final denial of claim

> (a)  Final denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail.  The notification of final denial . . . shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notation.

39 C.F.R. § 912.9(a).

Plaintiffs contend that the government failed to strictly comply with 39 C.F.R. § 912.9(a)'s plain language because the USPS mailed the denial letter to the Pawlowski firm, which was no longer their "attorney, or legal representative," instead of Youngblood, who was their attorney at the time.  Plaintiffs contend that the regulation describes the attorney who is "presently assisting the claimant with his or her claim" and "cannot be plausibly read to include an attorney that assisted the claimant in the past." Plaintiffs also assert that the district court added terms to the regulation and "created a new class of attorney—'administrative claim counsel'—to conclude that there were two sets of lawyers in [their]

case."  Plaintiffs contend that they were under no obligation to inform the USPS that the Pawlowski firm had withdrawn from its representation of Plaintiffs in the administrative proceedings.  They also argue that the government knew Youngblood was their new counsel and should have known that the Pawlowski firm was no longer representing them in those proceedings, based on the government's receipt of the complaint in the first FTCA action in which Youngblood was the only attorney of record.

When considering issues of statutory and regulatory interpretation, we begin "'where all such inquiries must begin: with the language of the statute itself,' giving 'effect to the plain terms of the statute.'"  *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1297 (11th Cir. 2021) (quoting *In re Valone*, 784 F.3d 1398, 1402 (11th Cir. 2015)); *accord Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1369 (11th Cir. 2019) ("When we construe regulations, we begin with the language of the regulation, just as we do for statutes").  In doing so, "[w]e evaluate whether the plain language of the regulation unambiguously answers the question at issue when we consider the regulatory language itself, the particular context in which that language appears, and the broader context and purpose of the regulatory scheme as a whole."  *Landau*, 925 F.3d at 1369; *accord Paresky v. United States*, 995 F.3d 1281, 1285 (11th Cir. 2021) ("'[T]o determine "the plain meaning of the statute,"' we consider 'the "particular statutory language at issue"' as well as 'the language and design of the statute as a whole.'"

(quoting *Wachovia Bank, N.A. v. United States*, 455 F.3d 1261, 1267–68 (11th Cir. 2006))).

The FTCA has both an administrative exhaustion requirement, *see* 28 U.S.C. § 2675(a), as well as a statute of limitations, *see id.* § 2401(b). "Combined, these provisions act as chronological bookends to an FTCA claim, marking both a date before which a claim may not be filed and a date after which any filing is untimely." *Barnes v. United States*, 776 F.3d 1134, 1139 (10th Cir. 2015). Under § 2675(a), an FTCA action shall not be instituted against the United States "unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail." A claimant need not wait for an administrative decision, however, as § 2675(a) also provides that "[t]he failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section." Thus, "to meet the threshold requirement of administrative exhaustion, plaintiffs must either (1) have their administrative claims finally denied by the relevant federal agency; or (2) if the agency fails to act on their administrative claims within six months of presentment, they may thereafter deem the claims (constructively) denied." *Barnes*, 776 F.3d at 1139.

Section 2401(b), in turn, provides that an FTCA claim shall be barred unless the claim "is presented in writing to the appropriate Federal agency within two years after such claim accrues or

unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." In other words, "[f]or claims brought under the FTCA, Congress has expressly stated the applicable limitation period" in § 2401(b). *Phillips*, 260 F.3d at 1318. And as we have explained, § 2401(b) "is the balance struck by Congress in the context of tort claims against the Government[,] and we are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 117 (1979)). "Therefore, in construing the FTCA's statute of limitations, 'we should not take it upon ourselves to extend the waiver beyond that which Congress intended.'" *Id.* (quoting *Kubrick*, 444 U.S. at 117– 18).

Government agencies, including the USPS, have adopted regulations that apply to FTCA administrative claims. *See* 28 C.F.R. pt. 14; 39 C.F.R. pt. 329; *see also* 28 C.F.R. § 14.11 ("Each agency is authorized to issue regulations and establish procedures consistent with the regulations in this part."). Under 39 C.F.R. § 912.9(a), the "[f]inal denial of an administrative claim shall be in writing and sent to the claimant, his attorney, or legal representative by certified or registered mail." *Accord* 28 C.F.R. § 14.9(a) (same). The denial letter also "shall include a statement that, if the claimant is dissatisfied with the agency action, he may file suit in an appropriate U.S. District Court not later than 6 months after the date of mailing of the notation." § 912.9(a).

Applying the regulation's plain language to this case, the USPS had to mail the denial letter to either Plaintiffs or their attorney or legal representative. It is undisputed that Youngblood never filed a notice of appearance or other indication that he was representing Plaintiffs in their administrative claims. And while Youngblood alone filed the first FTCA action complaint on Plaintiffs' behalf, neither Plaintiffs, the Pawlowski firm, nor Youngblood informed the government that the Pawlowski firm was no longer representing Plaintiffs in the administrative proceedings or that Youngblood had assumed sole responsibility for the administrative claims. Thus, the question before us is whether USPS complied with the regulation by mailing the denial letter to the Pawlowski firm, which was Plaintiffs' most recent "attorney, or legal representative" of record in the administrative proceedings, even though Plaintiffs assert that Youngblood was their attorney in those proceedings and that the government knew this because Youngblood was the only attorney appearing for them in the first FTCA case.

Evaluating § 912.9(a)'s plain language in "the broader context and purpose of the regulatory scheme as a whole," *Landau*, 925 F.3d at 1369, we conclude that the government complied with the regulation, given the facts of the case. Under 39 C.F.R. § 912.6, the regulation that identifies who can file an administrative claim under the FTCA involving the USPS, "[a] claim for personal injury may be presented by the injured person, his duly authorized agent, or legal representative." *See also* 28 C.F.R. § 14.3(b). And as we

have already seen, at the end of an unsuccessful administrative claim, § 912.9(a) requires the USPS to send a final denial to "the claimant, his attorney, or legal representative." Reading § 912.9(a) in context with § 912.6, the most natural reading is that the claimant's "attorney, or legal representative" who is to be sent the final denial of the administrative claim is the "attorney, or legal representative" currently "present[ing]" the administrative claim itself. In other words, the attorney or legal representative who the claimant has identified to the USPS as authorized to represent him in his administrative claim.

Here, the Rywant firm presented Plaintiffs' administrative claims to the USPS on February 16, 2017. Later, the Pawlowski firm took over representation of Plaintiffs in those claims and the USPS was notified of this change in counsel. As the record shows, however, Plaintiffs did not notify the USPS that Youngblood had taken over their representation in the administrative proceedings. And while Youngblood, and not the Pawlowski firm, filed the first FTCA action against the government on behalf of Plaintiffs, that fact alone did not inform the government that Youngblood had been substituted as Plaintiffs' counsel for purposes of their administrative claims. Nor does the record contain any evidence that Youngblood gave any indication to the government during either the pendency of the first FTCA action or the post-dismissal settlement conversations with Sullivan that he had taken over the Plaintiffs' representation in the administrative proceedings from the Pawlowski firm. Simply put, the USPS mailed the denial letter to

the legal representative who Plaintiffs had most recently identified as representing them in their administrative claims—the Pawlowski firm. In doing so, the USPS complied with the plain language of the regulation.

Plaintiffs contend that this interpretation creates "separate classes" of counsel and that they did not have to inform USPS of their change of counsel for their administrative claims. We find these arguments without merit. The Sixth Circuit's decision in *Zappone v. United States*, 870 F.3d 551 (6th Cir. 2017), is instructive. In *Zappone*, the plaintiffs failed to file their FTCA claims within § 2401(b)'s six-month limitations period following the final denial of their administrative claims. *Id.* at 555. The plaintiffs in *Zappone* had filed their administrative claims with the Internal Revenue Service under a cover letter that included executed power-of-attorney forms identifying three different attorneys as their counsel. *Id.* at 554. The IRS later mailed its final denial letters via certified mail to two of those attorneys. *Id.* "By this time, however, [the plaintiffs] had switched counsel" but "had not notified the IRS of [their former attorneys'] withdrawal of representation." *Id.*

Although the *Zappone* plaintiffs did not make the particular interpretation argument that Plaintiffs raise here—instead arguing for equitable tolling of the limitations period—they did argue that the IRS "knew of their change in counsel" based on their attorneys moving to withdraw their representation in a civil-forfeiture proceeding. *See id.* at 557. The Sixth Circuit rejected this argument,

explaining that the "withdrawal was limited to the forfeiture case and therefore did not constitute a withdrawal from their pending administrative claim for damages," i.e., the IRS had no reason to know that the plaintiffs' counsel had changed. *Id.* The Sixth Circuit ultimately found that the plaintiffs' "failure to learn of the IRS's denial notice was a problem of their own making: they never informed the IRS of their change in counsel, their prior attorneys neglected to inform them of the denial, and their new attorney fell short of retrieving the denial letter in time." *Id.* at 558.

We thus hold that the USPS complied with the plain language of § 912.9(a) by sending the denial letter to the Pawlowski firm—the legal representative most recently identified to the USPS as representing Plaintiffs for purposes of their administrative claims. Plaintiffs' FTCA claims are therefore untimely under § 2401(b) because they were filed more than six months after the mailing of the denial letter.

## B.  Whether Plaintiffs are entitled to equitable tolling

Plaintiffs also argue the district court erred in finding they were not entitled to equitable tolling of the § 2401(b) limitations period. We disagree.

As the Supreme Court has explained, the time limits in the FTCA are not jurisdictional, and a court therefore can toll them on equitable grounds. *United States v. Wong*, 575 U.S. 402, 412 (2015). "The doctrine of equitable tolling allows a court to toll the statute of limitations until such a time that the court determines

would have been fair for the statute of limitations to begin running on the plaintiff's claims." *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). "Equitable tolling 'is an extraordinary remedy which should be extended only sparingly.'" *Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1242 (11th Cir. 2004) (quoting *Justice v. United States*, 6 F.3d 1474, 1479 (11th Cir. 1993)). Thus, "[e]quitable tolling is appropriate when a movant untimely files because of *extraordinary circumstances* that are both beyond his control and unavoidable even with diligence." *Arce*, 434 F.3d at 1261 (emphasis in original) (quoting *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999)); *see also Motta ex rel. A.M. v. United States*, 717 F.3d 840, 846–47 (11th Cir. 2013) (holding that equitable tolling "cannot be applied to this FTCA claim because the untimely filing could have been avoided with due diligence"). The plaintiff has the burden of proving that such extraordinary circumstances exist. *Arce*, 434 F.3d at 1261; *accord Bost*, 372 F.3d at 1242; *see also Diaz v. Sec'y for Dep't of Corr.*, 362 F.3d 698, 701 (11th Cir. 2004) (noting the "difficult burden" of demonstrating entitlement to equitable tolling). As to the diligence inquiry, we have stated that "[t]he diligence required for equitable tolling purposes is 'reasonable diligence,' not 'maximum feasible diligence.'" *San Martin v. McNeil*, 633 F.3d 1257, 1267 (11th Cir. 2011) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010)). "But the principles of equitable tolling . . . do not extend to . . . a garden variety claim of excusable neglect." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990); *accord Motta*, 717 F.3d at 846–47; *Justice*, 6 F.3d at 1480.

Below, the district court found that Plaintiffs had failed to demonstrate entitlement to equitable tolling, as they had not shown an extraordinary circumstance that warranted tolling and had not indicated "what steps were taken, if any, to protect their right to timely file th[e] action." The district court further found that the fact Plaintiffs "were in good faith attempting to settle the claims based on [the government's] request for an updated demand [fell] far short of what is required to warrant equitable tolling."

Plaintiffs contend that the district court's determination as to equitable tolling was in error for several reasons. They assert that they are entitled to equitable tolling because the government failed to follow its FTCA regulations—by sending the denial letter to the Pawlowski firm instead of Youngblood—and that Plaintiffs should not be held to a stricter standard than the government in following the FTCA and its regulations. Plaintiffs also contend that the government's actions, which they describe as "gotcha" tactics, entitle them to equitable tolling. Plaintiffs point to Youngblood's affidavit, in which he attested that he spoke with Assistant U.S. Attorney Sullivan about settling their claims before Youngblood refiled their suit. Plaintiffs argue that Youngblood proceeded to gather the relevant records and bills to prepare the demands requested by the government and that, after doing so, "the government refused to negotiate knowing something Youngblood did not—it had sent [Plaintiffs'] prior counsel a denial letter." Plaintiffs further argue that, but for the government's request, they would have promptly refiled after the dismissal of the first FTCA action.

Reviewing the record, we agree with the district court's determination that Plaintiffs have not met their burden in showing entitlement to equitable tolling of the FTCA's limitations period. As explained above, Plaintiffs' argument that the government failed to comply with the regulation lacks merit because the government complied with the plain language of § 912.9(a) when the USPS sent the denial letter to the Pawlowski firm.

Moreover, there is no record evidence that Youngblood had informed Sullivan that he was representing Plaintiffs in the administrative claims. Nor is there record evidence that the government told Plaintiffs not to refile suit while Youngblood prepared updated demands to send to the government. Indeed, as Youngblood attested, Sullivan advised Youngblood that if he "were to forward reasonable updated demands to him that all three Plaintiffs' claims *could possibly be settled.*" (emphasis added). The government made no guarantees to Plaintiffs about settlement of the claims, and the fact that Sullivan raised the possibility of settlement of Plaintiffs' FTCA claims is not enough to excuse Plaintiffs' failure to file within the § 2401(b) limitations period. *Cf. Raziano v. United States*, 999 F.2d 1539, 1541–42 (11th Cir. 1993) ("[T]he government gave the [plaintiffs] no good reason to think that the pursuit of out-of-court remedies would toll the limitation on a judicial remedy. The [government] had no duty to remind the [plaintiffs] that the statute of limitations was running."); *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998) ("The mere expression of 'some confidence' that the agency 'would be interested in trying to settle' the

case later is not enough to excuse plaintiffs' letting the statute of limitations lapse. In these circumstances, equitable tolling does not apply.").

Plaintiffs also rely on the Fifth Circuit's decision in *Perez v. United States*, 167 F.3d 913 (5th Cir. 1999). In *Perez*, the claimant sent a demand letter to the Texas National Guard and filed suit in state court. *Id.* at 914. The Texas National Guard, however, was the wrong governmental entity; the claimant should have sent the demand letter to the United States Army instead. *Id.* at 915. The state court suit was dismissed, and the claimant filed a claim with the Army, which denied the claim under the FTCA's statute of limitations. *Id.* The claimant then sued the government in federal court. *Id.* The district court dismissed the suit, concluding that the claimant failed to diligently investigate her claim. *Id.* While recognizing that the Texas National Guard violated regulations by failing to provide the claimant a particular form, the court determined that the claimant's decision to sue the wrong governmental entity was not the product of the National Guard's affirmative misstatements and that the claimant was not entitled to equitable tolling. *Id.* On appeal, the Fifth Circuit disagreed, concluding that equitable tolling was warranted because the claimant's error—"misunderstanding the dual nature of the Texas National Guard"—was not merely a "garden variety claim of excusable neglect," even though the error "would have been uncovered through more careful legal research." *See id.* at 918. The Fifth Circuit recognized that the claimant had taken "some step recognized as important by the

statute before the end of the limitations period" by presenting in writing the claim to the Texas National Guard. *See id.* The Fifth Circuit alternatively concluded that the Texas National Guard's failure to follow the regulation requiring it to send the relevant form to the claimant constituted grounds for equitable tolling. *See id.* at 918–19.

We find this case distinguishable from *Perez*. Unlike *Perez*, the government did not violate any of its regulations in sending the denial letter to the Pawlowski firm instead of Youngblood. In contrast, like the plaintiffs in *Zappone*, Plaintiffs' failure to learn of the USPS's denial letter "was a problem of their own making: they never informed [USPS] of their change in counsel, their prior attorneys neglected to inform them of the denial, and their new attorney fell short of retrieving the denial letter in time." *See Zappone*, 870 F.3d at 558. And while Youngblood, at the summary judgment hearing, asserted that he had "look[ed]" for a denial letter but "didn't see one," there is no indication in the record that Plaintiffs or Youngblood diligently searched for the existence of the denial letter or inquired into the status of the administrative claims, e.g., by contacting the Pawlowski firm, the USPS, or even the government's trial counsel about those matters.

In short, the missteps of Plaintiffs' attorneys amount to a garden variety claim of excusable neglect that does not constitute extraordinary circumstances warranting equitable tolling. *Cf. Maples v. Thomas*, 565 U.S. 266, 282 (2012) (explaining that "an attorney's negligence, for example, miscalculating a filing deadline, does

not provide a basis for tolling a statutory time limit"). Plaintiffs could have informed the USPS of the change in their legal representative from the Pawlowski firm to Youngblood—indeed, they had done so earlier in the administrative proceedings when they changed counsel from the Rywant firm to the Pawlowski firm—but they failed to do so. Accordingly, the district court did not err in determining that Plaintiffs failed to show entitlement to equitable tolling.

## IV.    CONCLUSION

For all these reasons, we affirm the district court's order granting summary judgment for the government.

**AFFIRMED.**